UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br><br>Petitioner,<br><br>v.<br><br>MIRA SHINGAL, et al.,<br><br>Respondents. | Case No. 5:17-mc-80119-EJD<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Re: Dkt. Nos. 30, 33 |

This action presents one basic question: whether the court should adopt a magistrate judge's recommended order enforcing subpoenas issued by the Secretary of Labor, R. Alexander Acosta, against two individuals - Mira Shingal and Ajay Shingal (the "Individual Respondents") - and several business entities associated with them - namely, Apex Global International, Inc., Delta Hotel Group, L.P., SAI RAM Hospitality Group Inc., SAI RAM Hotel Group, Inc., Silicon Valley International, Inc., Starlight Management Group, Inc., Sterling International Group, LLC aka as Sterling International Group, Inc., and Symbian International, Inc. (the "Corporate Respondents").

This record is sufficiently developed such that neither an evidentiary hearing nor a motion hearing is necessary to render a decision. Civ. L.R. 7-1(b). Thus, the hearing scheduled for March 22, 2018, will be vacated. Because the magistrate judge's determinations withstand de novo review, the court will adopt them for the reasons explained below. But the magistrate judge's separate order granting equitable tolling is premature and unjustified on this record. Such an order will, therefore, not be carried over as a part of this limited-issue proceeding.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **The Secretary's Investigation**

The Wage and Hour Division opened an investigation of the Wyndham Garden Silicon

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

1

1  Valley hotel in December, 2016, "in order to determine whether any person had violated or was
2  violating any provision of the FLSA or any regulations promulgated thereunder during the period
3  beginning January 9, 2014." Pet., Dkt. No. 1, at ¶ 5. This investigation later expanded to include
4  another hotel, the Wyndham Garden San Jose Airport, as well as the restaurants located on both
5  hotels' premises. Id. The Secretary believes that Respondents, individually or in some
6  combination thereof, own these entities. Decl. of Lilita Hom, Dkt. No. 3, at ¶ 4.

Investigators visited the Wyndham Garden Silicon Valley hotel on January 3rd, January 19th, and January 26, 2017, but were provided limited records. Decl. of Edgar Arriaga, Dkt. No. 3, at ¶¶ 4-6. An investigator was told by Mira Shingal and others that the hotel would not produce additional records and would not permit employee interviews. Id. Mira Shingal also "denied ownership of the Silicon Valley Hotel or the related restaurant, and she denied any knowledge of the Airport Hotel." Id. at ¶ 6.

Investigators later visited the Wyndham Garden San Jose Airport hotel on March 6, 2017, but the hotel's general manager refused to meet. Id. at ¶ 10. The investigators instead met with the hotel's accounting manager on that date, and again on April 11, 2017. Id.; Decl. of Lilita Hom, at ¶ 12. The accounting manager provided limited documents, and investigators interviewed some employees on April 11th. Decl. of Lilita Hom, at ¶ 12. The interviews were not completed, however, and a follow-up session was scheduled for the next day but eventually refused. Id.

The Wage and Hour Division also attempted to obtain compliance through an attorney representing some Respondents. Decl. of Ana Hurtado-Aldana, Dkt. No. 3, at ¶¶ 6-11. Though the attorney produced a limited portion of the requested documents, she declined to produce any documents related to the restaurants without separate requests for those entities. Id. at ¶¶ 7-8. The attorney also stated the Individual Respondents are not "employers" under FLSA and could not be compelled to supply information to the Secretary. Id. at ¶ 10.

Several categories of documents necessary for the Secretary to complete the investigation remain outstanding. Id. at ¶¶ 12-13.

**B. The Subpoenas**

During the investigation, the Secretary submitted ten subpoenas duces tecum to Respondents in two sets.

The first set of eight subpoenas was issued to the Corporate Respondents on February 17, 2017, by a Wage and Hour Regional Administrator. Decl. of Ruben Rosalez, Dkt. No. 3, at Ex. A. Each of the subpoenas required the Corporate Respondents to produce certain categories of financial documents for the period beginning January 9, 2014, to January 8, 2017. Id.

The second set of two subpoenas, issued to the Individual Respondents by the Regional Administrator on June 16, 2017, also required the production of certain financial documents for the period of January 9, 2014, to January 8, 2017. Id. at Ex. B.

**C. The Instant Proceeding**

The Secretary filed a Petition to enforce the subpoenas on September 20, 2017, claiming that Respondents failed to produce all responsive documents. The action was assigned to a magistrate judge, who ordered Respondents to show cause why they should not be ordered to comply. Dkt. Nos. 1, 6. Several Respondents filed returns, and the magistrate judge held a hearing on the order to show cause on November 14, 2017. Dkt. Nos. 12-21, 28.

The magistrate judge found the enforcement issue to be dispositive of the Petition, citing National Labor Relations Board v. Cable Car Advertisers, Inc., 319 F. Supp. 2d 991 (N.D. Cal. 2004), and filed a Report and Recommendation on November 17, 2018. Dkt. No. 30. The case was then reassigned to the undersigned, and Respondents filed an Objection. Dkt. Nos. 31, 33.

**II. LEGAL STANDARD**

**A. Review of Magistrate Judge's Report and Recommendation**

Under 28 U.S.C. § 636, "a magistrate judge may hear and determine nondispositive matters but not dispositive ones." Bastidas v. Chappell, 791 F.3d 1155, 1159 (9th Cir. 2015). "As to dispositive matters, the magistrate judge may go no further than issuing a report and recommendation to the district court, which then must undertake de novo review." Id.

Agreeing with Judge Lloyd's determination that an enforcement decision is dispositive,

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
3

this court reviews the Report and Recommendation de novo.

### B. Enforcement of Agency Subpoena

The Ninth Circuit has explained that the "scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quire narrow." EEOC v. Fed. Express Corp., 558 F.3d 842, 848 (9th Cir. 2009) ("Federal Express") (quoting EEOC v. Karuk Tribe Hous. Auth., 260 F.3d 1071, 1076 (9th Cir. 2001). Indeed, "[a] district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint." McLane Co., Inc. v. EEOC, 137 S. Ct. 1159, 1165 (2017).

Within this framework of limited review, Federal Express designates three "critical" questions: (1) whether Congress granted authority to investigate, (2) whether procedural requirements have been observed, and (3) whether the evidence is relevant and material to the investigation. 558 F.3d at 848. "An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met." FDIC v. Garner, 126 F.3d 1138, 1143 (9th Cir. 1997).

If the Federal Express conditions are satisfied, then "the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." McLane Co., 137 S. Ct. at 1165.

### III. DISCUSSION

Before addressing the merits, the court must first define the boundaries of this proceeding because some of the arguments presented in the parties' pleadings touch on matters that are not up for review. First, this is not an action for violation of the FLSA, but instead the corollary of an investigation to determine whether any such violation has occurred. See 29 U.S.C. § 211(a). Consequently, the court need not delve into the likelihood of any potential violation to decide whether or not to enforce the subpoenas. See McLane Co., 137 S. Ct. at 1165.

Second, Respondents provide no authority to support their suggestion that the court must determine, in the context of this limited enforcement review, which records they have produced and which records remain outstanding. See Objection, Dkt. No. 33, at p. 2:21-22 ("If each

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
4

subpoena was proper and within the jurisdiction of the Secretary, which records are outstanding, and which must still be produced?"). To the contrary, Federal Express teaches that this proceeding is a discreet one, turning on the answers to three questions. 558 F.3d at 848. This is not the vehicle by which the sufficiency of a document production is reviewed, even if that production consists of "several bankers' boxes full of records" or the voluntary production of documents from entities not subject to a subpoena. Whether Respondents have adequately complied with particular production requests is a determination for another day.

Third, Respondents' criticism of the magistrate judge who originally presided over this action not only borders on the inappropriate, but is entirely irrelevant. The standard of review is de novo, which "means that the reviewing court 'do[es] not defer to the lower court's ruling but freely consider[s] the matter anew, as if no decision had been rendered below." Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009) (quoting United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988)). Thus, while the court has read the magistrate's Report and Recommendation as part of its inventory of the record, it must nonetheless decide whether or not to adopt it based on a new, unfettered assessment of the merits.

With these clarifications, the court now turns to the Federal Express conditions and the remainder Respondents' specific objections.

### A. First Condition: Authority to Investigate

There can be little dispute over the first Federal Express condition. Congress has granted the Secretary the ability to "investigate and gather data regarding the wages, hours and other conditions and practices of employment in any industry" subject to the FLSA, and the Secretary "may enter and inspect such places and such records . . . as he may deem necessary or appropriate to determine whether any person has violated any provision of [the FLSA], or which may aid in the enforcement of the provisions of [the FLSA]." 29 U.S.C. § 211(a). Congress has also bestowed upon the Secretary a subpoena power to aid the investigation mandate. 29 U.S.C. § 209.

Here, the Secretary issued the subpoenas during an active investigation into whether FLSA violations have occurred at the Wyndham Garden Silicon Valley hotel, the Wyndham Garden San

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
5

Jose Airport hotel, or either of the these hotels' restaurants. Given the Secretary's statutory authorization to conduct such investigations, the court finds the "authority" condition easily satisfied.

Despite the explicit FLSA authorization, Respondents nonetheless argue the Secretary lacks "jurisdiction" to explore entities not directly subject to the investigation, and cannot obtain documents they deem "private corporate financial records," such as tax filings, balance sheets, bank statements, and other financial statements, because the two hotels and two restaurants targeted by the Secretary's investigation have offered to stipulate to "jurisdiction" under the FLSA. Respondents contend "[t]here is no authority under the code and statutory scheme that allows the Secretary to review financial records, and if financial records are necessary it is narrowly tailored to establish jurisdiction." This argument is unpersuasive.

To begin, the objection is not "jurisdictional," but is rather based on *coverage*. See Karuk Tribe Hous. Auth., 260 F.3d at 1077-78 (explaining the difference between "coverage" and "jurisdiction" in a subpoena enforcement action). The portion of the FLSA that Respondents cite to support the argument's framing - that the act applies to enterprises "whose annual gross volume of sales made or business done is not less than $500,000" (29 U.S.C. § 203(s)(1)) - has been deemed an element of a FLSA claim rather than a jurisdictional prerequisite. Hernandez v. Martinez, No. 12-cv-06133-LHK, 2014 WL 3962647, at *3 n.1 (N.D. Cal. Aug. 13, 2014). As such, the Secretary's ability to obtain records, whether financial or otherwise, does not depend on whether an enterprise's sales exceed the statutory amount. See EEOC v. Children's Hosp. Med. Ctr. of N. Cal., 719 F.2d 1426, 1429 (9th Cir. 1983) (holding that "agency jurisdiction is not abrogated because the party being investigated may have a valid defense to a subsequent suit by the agency"); see also Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 200 (1946) (holding that "in case of disobedience, the District Courts are called upon to enforce the subpoena through their contempt powers, without express condition requiring showing of coverage" under the statutory scheme).

Nor does FLSA require that an entity be the extant target of an investigation before it can

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
6

be subject to a subpoena, or even require that an entity have employees or otherwise qualify as an "employer." See Oklahoma Press Pub. Co., 327 U.S. at 201 (explaining that "[t]he very purpose of the subpoena and of the order, as of the authorized investigation, is to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so," and holding that Congress has authorized the agency, "rather than the District Courts in the first instance, to determine the question of coverage in the preliminary investigation of possibly existing violations"); see also Solis v. Forever 21, Inc., No. CV 12-09188 MMM (MRWx), 2013 WL 1319769, at *4 n.34 (C.D. Cal. Mar. 7, 2013).

Rather, the language authorizing the inspection of any records "necessary or appropriate" to assess for a statutory violation or to enforce the FLSA reveals the Secretary may seek records outside of those solely focused on wages, hours and working conditions, including records needed to confirm whether the FLSA sales volume threshold is satisfied. By offering to stipulate that sales exceeded $500,000 for the four target entities, the hotels and restaurants signified their intention not to contest that element of coverage for any subsequent FLSA claim against them. Respondents could not, however, have curtailed the Secretary's *jurisdiction* to seek the universe of information permitted by the FLSA, which concept is broader than coverage.

Respondents' related objection disputing production of the Individual Respondents' tax returns is misplaced for the same reason. Their argument, unsupported by citation to authority, that the Secretary "cannot obtain financial information" but can only "investigate working conditions" is inconsistent with the wide scope of records available to the Secretary under the FLSA. See 29 U.S.C. § 211(a) (referencing records "necessary or appropriate" to determine whether a violation occurred, as well as those records that "may aid in the enforcement of the provisions").

In sum, the court rejects the portion of Respondents' objection that seems to challenge the scope of the Secretary's authority.

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

7

### B. Second Condition: Observation of Procedural Requirements

Absent unique circumstances, an agency observes procedural requirements when a subpoena is properly issued and served. See Solis v. v. MZS Corp., No. MISC 10-80302 VRW, 2011 WL 337492, at *2 (N.D. Cal. Jan. 31, 2011).

As a prima facie matter, the Secretary has successfully demonstrated procedural compliance. The subpoenas were issued by the Regional Administrator, who was delegated with the authority to undertake such tasks by the Secretary. Decl. of Ruben Rosalez, at ¶ 3. The subpoenas to the Corporate Respondents were then personally served on various individuals affiliated with the hotels and restaurants, since the Secretary identified during the investigation that the Corporate Respondents were involved in the operations of those entities. Decl. of Edgar Arriaga, at ¶¶ 7-8. Subpoenas issued to the Individual Respondents were personally served on Mira Shingal. Decl. of Lilita Hom, at ¶ 17.

In response to this showing, Respondents argued before the magistrate judge that the manner in which they were served with the subpoenas was insufficient, either because it was not served on the designated corporate agent or not personally served on each individual. The magistrate judge considered the argument but was nonetheless unconvinced it precluded enforcement of the subpoenas. Citing FTC v. Carter, 636 F.2d 781, 791 (D.C. Cir. 1980), the magistrate judge observed that "in a proceeding to enforce an administrative subpoena, a court may allow less formal service of process than that which is generally required under Rule 4," and noted that no party claimed a denial of due process or a deprivation of the opportunity to present a defense.

Reviewing this issue anew, the court concurs with the magistrate judge's conclusion that service was adequately effectuated on all Respondents. Under Federal Rule of Civil Procedure 81(a)(5), service rules applicable in other civil cases apply to subpoena enforcement actions "except as otherwise provided . . by court order in the proceedings." This rule permits the district court to condone less-formal service methods, recognizing that subpoena proceedings are summary in nature. Carter, 636 F.2d at 791. Given that all Respondents represented by counsel

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

8

were able to robustly participate in this action, by first attempting to negotiate their responses to the subpoenas with the Secretary, opposing the Secretary's Petition before the magistrate judge, and now objecting to enforcement before the district court, the court finds that the service procedure utilized here was sufficient to provide notice.

Accordingly, the second Federal Express condition is satisfied.

### C.  Third Condition: Relevant and Material Evidence

When examining the third Federal Express condition, the court is mindful that relevancy and materiality for the purposes of a subpoena proceeding are "determined in terms of the investigation rather than in terms of evidentiary relevance." Fed. Express Corp., 558 F.3d at 854. This requirement is "not especially constraining." Id. (quoting EEOC v. Shell Oil Co., 466 U.S. 54, 68 (1984)). "The term 'relevant' is 'generally construed' to 'afford[] the Commission access to virtually any material that might cast light on the allegations against the employer." Id. (quoting Shell Oil Co., 446 U.S. at 68-69).

In their objection, Respondents identify certain categories of documents they argue are irrelevant to the Secretary's investigation: (1) those same "private corporate financial records" discussed above, including general ledgers, (2) corporate tax returns, (3) the Individual Respondents' personal tax returns, and (4) property deeds, mortgage documents and loans obtained or issued. But given the expansive definition of relevance which governs subpoena enforcement actions, the court finds the Secretary has met his burden for each of these categories by explaining their significance to the investigation.

For the first two categories, the Secretary states the documents are needed to identify the employees working at the hotels and restaurants, to evaluate which individuals and entities are acting as their employers, and to identify any violations of the FLSA that can only be analyzed by comparing the financial statements of multiple entities. Reply, Dkt. No. 25, at 8:6-15. As the Secretary puts it, "[i]t is textbook investigatory procedure to request documents from related entities to confirm that workers are not being shared between entities or paid 'off the books' of the main entity's payroll." Id. And specific to the general ledgers and bank records, the Secretary

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
9

states these documents should be produced because Respondents have not been able to make a complete production of payroll records. These are legitimate areas of investigation under the FLSA, and the documents requested are relevant to that investigation. See 29 U.S.C. § 211(a).

For the third category, the Secretary states the personal tax returns are necessary to confirm which entities the Individual Respondents own or control and to determine whether there are other entities not yet discovered or disclosed that may have been used to pay workers at the hotels and restaurants. Reply, Dkt. No. 25, at 11:18-22. These records are particularly relevant to the investigation at issue here, since it appears the Individual Respondents have utilized an opaque collection of other business entities to manage the affairs of the hotels and restaurants. It also appears the Individual Respondents were disinclined to fully cooperate with the investigation, both before and after receiving the subpoenas, and have neglected to provide entirely accurate representations concerning their involvement with related entities and those entities' connections to the hotels and restaurants. In light of these circumstances, the production of a wider array of documents is justified, all of which may help to sort out the structure of Respondents' business and shed light on the veracity of the Individual Respondents' statements to the Secretary - and to the State of California for that matter.[1]

For the fourth category, the Secretary states that deeds, mortgages and leases may assist with identifying persons or entities having additional documents or information relevant to the investigation. The Secretary further states that these documents may show relationships that explain the control that certain individuals or entities exercised over other entities or other employees. Id. at 8:16-9:2. Like the category discussed directly above, these records have increased relevance to the investigation in order to confirm which entities are actually associated with the hotels and restaurants, and to determine whether the Individual Respondents' representations are accurate.

Respondents' arguments against the relevance of these records are unpersuasive. They

---

[1] For this reason, there is little to be gained from taking judicial notice of documents from the California Secretary of State.

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
10

contend that some of the records sought, such as bank records, deeds and mortgage documents, do not show ownership or identify employees. Their representation, however, does not render these documents irrelevant to the investigation because relevance for investigatory purposes is broader than the relevance standard used for evidentiary issues. See Fed. Express Corp., 558 F.3d at 854. As the court has explained, these records are at least relevant to confirm whether Respondents' description of the documents is accurate, but also relevant to understanding the structure of Respondents' business. The out-of-district order Respondents cite to imply otherwise is distinguishable because there is no indication from that action that the respondent utilized a web of independent yet ostensibly related entities to conduct business. See Acosta v. Austin Elec. Servs. LLC, No. CV-16-02737-PHX-ROS, slip op. (Sept. 5, 2017). In contrast, the manner in which the Individual Respondents have arranged their affairs, and their conduct in response to the investigation, mandates the production of a broader array of documents.

In reference to the tax returns specifically, Respondents believe the Secretary must satisfy a "compelling need" test before those records are produced. Respondents, however, have not produced authority from the Ninth Circuit mandating the application of such a standard to the production of tax returns in civil discovery. Notably, in the one Ninth Circuit case Respondents do cite, the Ninth Circuit permitted the production of tax returns after declining to find a privilege protection or apply a heightened standard for production. See Heathman v. U.S. Dist. Ct., 503 F.2d 1032, 1045 (9th Cir. 1974). And as the Ninth Circuit observed in another case, any concerns over the preservation of confidential information in Respondents' tax returns can be addressed through protective orders. Stokwitz v. United States, 831 F.2d 893, 897 (9th Cir. 1987). This court, therefore, finds no legal basis to apply a different standard of production for tax returns.[2]

Because the Secretary has shown the subpoenas seek evidence relevant and material to the investigation, this condition is satisfied.

---

[2] Nor will the court issue an order at this time permitting the Individual Respondents to produce redacted copies of their tax returns. Without reviewing the documents themselves, the court cannot assess whether the proposed redactions are justified. This issue, like others involving the sufficiency of Respondents' production, must be addressed separately if it persists.

### D. Other Issues

#### i. Overbreadth

In their Objection, Respondents argue the subpoenas are overbroad and should be narrowed for many of the same reasons already discussed in conjunction with the first and third Federal Express conditions. These objections fail in light of the preceding discussion. The Fifth Circuit opinion cited by Respondents in support of narrowing the subpoenas, McComb v. Hunsaker Trucking Contractor, Inc., 171 F.2d 523 (1949), does not persuade the court otherwise given the Secretary's relevance presentation, the structure of Respondent's business, and their prior unwillingness to fully participate in the investigation.

Respondents also contend the subpoenas are temporally overbroad because they require Respondents to produce documents for four years when the FLSA statute of limitations is three years. Objections based on a statute of limitations, however, do not preclude the enforcement of an administrative subpoena. See Karuk Tribe Hous. Auth., 260 F.3d at 1076.

#### ii. Wrong Entities

Respondents claim the magistrate judge "disregarded" their contention that the "wrong entities" were named in the subpoenas. This objection is somewhat puzzling because rather than disregarding Respondents' argument, the magistrate judge specifically addressed it, finding that the entities affiliated with Respondents were adequately served and noticed of this proceeding despite their nomenclature. The rejection of a considered argument, as occurred here, is something different than disregarding an argument.

In any event, Respondents have not provided a persuasive reason to deviate from the magistrate judge's conclusion about notice to "wrongly named" entities. Their argument on that topic fares no better on review.

#### iii. Equitable Tolling

As a final matter, Respondents argue the court should decline to adopt the magistrate judge's order pre-emptively tolling the statute of limitations "until such time as the [Secretary] notified this Court that Respondents have complied with the administrative subpoenas." This

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
12

order was not part of the Report and Recommendation and does not directly impact the decision to enforce the subpoenas. Nonetheless, Respondents have a point.

"[T]he equitable tolling doctrine 'enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices.'" Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013) (quoting Holland v. Florida, 560 U.S. 631, 650 (2010)). Generally, the proponent of equitable tolling must establish two elements: (1) that the proponent has been pursuing rights diligently, and (2) that some extraordinary circumstances stood in the way. Id.

The magistrate judge's order is troubling on two levels. First, the order essentially issued on an ex parte basis, as part of the order to show cause that prompted Respondents to participate in this action. The record before this court is missing any showing of the doctrine's two elements from the Secretary, and nothing suggests Respondents were provided an opportunity to comment on the propriety of such an order before it was issued.

Second, this court shares the concern of another to have recently confronted the same species of tolling request. That court described it as "prematurely seeking injunctive relief while simultaneously seeking an order to enforce" subpoenas. Acosta v. GT Drywall, Inc., Case No. MC 17-0006-JGB (KKx), 2017 WL 3262109, at *4 (C.D. Cal. June 26, 2017). And much like in that case, the Secretary has failed to convincingly explain why a tolling decision must be made now when it is plainly better-suited to a subsequent FLSA action. By then, all facts related to timing, diligence and alleged obstruction can be presented and an informed judicial decision can be made on a fully-developed record.

For these reasons, the court will not order the tolling of the FLSA statute of limitations as part of this action.

**IV. ORDER**

Based on the foregoing, the court ADOPTS the magistrate judge's Report and Recommendation (Dkt. No. 30), such that the Secretary's Petition (Dkt. No. 1) is GRANTED as follows:

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

13

1.      Within 45 days of the date of this order, or within another time period agreed to by the parties, the Individual Respondents shall produce to the Secretary complete copies of their personal tax returns.

The court orders the parties to meet and confer further over proposed redactions to these documents. For his part, the Secretary should seriously consider whether the investigation can still advance even if the Individual Defendants produce redacted tax returns. For their part, the Individual Defendants should refrain from using redactions to prevent the production of relevant information in light of the broad definition that applies to this proceeding.

Any dispute over redactions that remains after this additional discussion should be presented in the form of a motion to compel, which motion and response must describe a concentrated effort to resolve this issue short of additional litigation.

2.      Within 45 days of the date of this order, or within another time period agreed to by the parties, the Individual Respondents shall prepare a line-by-line response to the Secretary's subpoenas for each entity conducting any business at the specified addresses for which they have possession, custody, or control over the records. For each such entity, the Individual Respondents shall either produce the requested records, or provide the Secretary with a sworn statement that the records do not exist.

3.      Within 45 days of the date of this order, Apex Global International, Inc.; Delta Hotel Group, L.P.; SAI RAM Hospitality Group, Inc.; SAI RAM Hotel Group, Inc.; Silicon Valley International, Inc.; Starlight Management Group, Inc.; Sterling International Group, LLC, aka Sterling International Group, Inc.; and Symbian International, Inc. must each prepare a line-by-line response to their respective subpoenas. Respondents shall either produce the requested records, or provide the Secretary with a sworn statement that the records do not exist.

4.      To the extent there is overlap between the subpoenas to the Individual Respondents and the Corporate Respondents, only one copy of the documents need be produced to the Secretary.

5.      Where reasonably feasible, Respondents shall produce documents to the Secretary

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION

14

in their native formats.

6. The court declines to adopt an order tolling the statute of limitations, and any such order to that effect issued by the magistrate judge is VACATED.

The hearing scheduled for March 22, 2018, is also VACATED.

**IT IS SO ORDERED.**

Dated: March 16, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:17-mc-80119-EJD
ORDER ADOPTING IN PART REPORT AND RECOMMENDATION
15